UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. C10-1080 MJP |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| SAYED ABDELGALIL a/k/a SAYED AWAD ALIA MOSTAFA ABDELGALIL, | |
| Defendant. | |

This matter comes before the Court on the Plaintiff's motion for summary judgment on its petition to denaturalize Defendant, Sayed Abdelgalil. (Dkt. No. 9.) Having reviewed the motion, Defendant's response (Dkt. No. 11), the reply (Dkt. No. 13), and all related papers, the Court GRANTS Plaintiff's motion.

**Background**

Defendant Abdelgalil is an Egyptian-born U.S. citizen who came to the United States in 1997. (Dkt. No. 13 at 11.) He is married to a U.S. citizen and applied for citizenship on June 22, 2000. On his application (Form N-400), he was asked whether he had committed any crimes for

1  which he had not been arrested or whether he had been "arrested, cited, charged, indicted,

2  convicted, fined or imprisoned for breaking or violating any law or ordinance. . . ." (Dkt. No. 13

3  at 13.) He answered these questions in the negative.

4        After applying for his citizenship, Abdelgalil was arrested on July 19, 2000, and charged

5  on December 12, 2000, with third-degree rape. (Dkt. No. 9 at 26-27, 29.) He pleaded guilty to a

6  charge of false imprisonment on October 12, 2001. (Dkt. No. 9 at 46, 49-52.) He received a 30

7  day sentence on that same day and was given one year of probation. (Dkt. No. 9 at 52.)

8        On January 25, 2001, after being arrested and charged with third-degree rape, Abdelgalil

9  sat for a naturalization interview with Immigration and Naturalization Service ("INS") Officer

10  Bruce Rowe. (Dkt. No. 9 at 31.) At the time Abdelgalil applied for citizenship the INS had not

11  been replaced by the Department of Homeland Security. During the interview, Officer Rowe

12  asked Abdelgalil the same questions on the N-400 form, including those about criminal conduct.

13  (Id. at 31-33.) Officer Rowe declares that it is his practice to make a notation next to any

14  question on the N-400 form that he asks of an applicant, and that he made such a notation on the

15  forms Abdelgalil submitted next to the questions about being cited, charged, or arrested for any

16  crimes. (Id. at 32.) Abdelgalil still answered the question in the negative. (Id.) In a declaration

17  filed in this litigation, Abdelgalil states that "[m]y failure to disclose on January 25, 2001, and

18  January 31, 2001 was not willful since I believed that the criminal case would be dismissed.

19  (Abdelgalil Decl. ¶ 2.) He does not deny that he failed to disclose the criminal charges.

20  **Analysis**

21  A.    <u>Standard</u>

22        The Supreme Court has long recognized that "once citizenship has been acquired, its loss

23  can have severe and unsettling consequences." <u>Fedorenko v. United States</u>, 449 U.S. 490, 505

24

1  (1981). Because of this, "the Government 'carries a heavy burden of proof in a proceeding to
2  divest a naturalized citizen of his citizenship.'" Id. (quoting Costello v. United States, 365 U.S.
3  265, 269 (1961)). "The evidence justifying revocation of citizenship must be clear, unequivocal,
4  and convincing and not leave the issue in doubt." Id. (internal quotation marks and citations
5  omitted).

6  As with any summary judgment motion, the Court must grant summary judgment "if
7  there is no genuine dispute as to any material fact and the movant is entitled to judgment as a
8  matter of law." Fed. R. Civ. P. 56(a).  Material facts are those "that might affect the outcome of
9  the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
10 The underlying facts are viewed in the light most favorable to the party opposing the motion.
11 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The party moving
12 for summary judgment has the burden to show initially the absence of a genuine issue
13 concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  Once the
14 moving party has met its initial burden, the burden shifts to the nonmoving party to establish the
15 existence of an issue of fact regarding an element essential to that party's case, and on which that
16 party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24
17 (1986).

18 B.     False Testimony

19      The government argues that denaturalization is proper because Abdelgalil willfully
20 concealed his criminal history and mislead the INS as to this material fact on his application.
21 The Court agrees.

22      To denaturalize a person granted citizenship, the government must demonstrate that the
23 citizen's naturalization was either "illegally procured" or "procured by concealment of a material
24

fact or by willful misrepresentation." 8 U.S.C. § 1451(a). In the Ninth Circuit, a "[w]illful misrepresentation of a material fact is satisfied by a finding that the misrepresentation was deliberate and voluntary." Espinoza-Espionza v. INS, 554 F.2d 921, 925 (9th Cir. 1977). A fact is material if it "has a natural tendency to influence, or was capable of influencing, the decision of" the decisionmaking body to which it was addressed." Kungys v. United States, 485 U.S. 759, 770 (1988).

The evidence supports finding Abdelgalil willfully misrepresentation a material fact on his application for citizenship. Abdelgalil admits he did not tell the truth or disclose the pending charges to Officer Rowe during his naturalization interview. (Dkt. No. 12 at 2.) There is nothing showing that the testimony was involuntary, only that Abdelgalil did not think it was an issue because he "believed that the criminal case would be dismissed." (Id.) The act of concealment was thus clearly deliberate. Officer Rowe declares that he would not have approved the application as he did had Abdelgalil stated he had a criminal charge pending. (Dkt. No. 9 at 32.) The facts concealed were material. Moreover, the criminal history is relevant to the INS's determination of whether Abdelgalil had "good moral character," under 8 C.F.R. § 316.10(b)(3)(iii) (2001). The record contains clear and convincing evidence that Abdelgalil willfully misrepresented and concealed a material fact to gain citizenship. The Court GRANTS the motion for summary judgment and issues this order revoking Abdelgalil's citizenship.

Abdelbalil argues that during his interview he did not fail to disclose a material fact because unlawful imprisonment is not a crime of moral turpitude. This misses the issue. The statute clearly makes denaturalization proper if the applicant "procured [citizenship] by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Whether that fact concealed concerns a crime of moral turpitude is irrelevant. The N-400 form asked

whether Abdelgalil had been charged with committing any crime, to which he answered "no," contrary to the pending charges of third-degree rape. This was a willful concealment of a material fact.

C.  Default

The government argues that the Court should grant its motion because Abdelgalil failed to respond in a timely manner to the complaint. The Court does not dismiss the action on the basis of default. Rather, it is satisfied that the government is entitled to relief on the merits.

**Conclusion**

The Court GRANTS the government's motion for summary judgment. In accordance with 8 U.S.C. § 1451(f), this order cancels and revokes Abdelgalil's certificate of citizenship. Abdelgalil is required to surrender his certificate of citizenship to the Attorney General.

The clerk is ordered to transmit a certified copy of this order to the Attorney General, and to provide copies of this order to all counsel.

Dated this 1st day of April, 2011.

Marsha J. Pechman
United States District Judge